IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE

LABREESHA BRANAE BATEY,
    Plaintiff,

v.

STATE OF TENNESSEE and
NATHAN METHVIN in his official and individual capacity
as a Tennessee State Trooper;
    Defendants.

Docket No._____
JURY DEMAND

## COMPLAINT

Plaintiff, LaBreesha Branae Batey, by and through counsel, brings this action seeking monetary damages against Defendants for violations of Plaintiff's civil rights guaranteed by the United States Constitution and Tennessee law, false arrest and incarceration, and malicious prosecution. In support of this Complaint, Plaintiff states as follows:

### JURISDICTION AND VENUE

1. The Court has jurisdiction under 28 U.S.C. §1331 and 28 U.S.C. §1343(a)(3)-(4) because the controversy arises under the U.S. Constitution and 42 U.S.C. §1983.

2. This Court also has supplemental jurisdiction over claims asserted against Defendants under Tennessee State law pursuant to 28 U.S.C. §1367.

3. Venue is proper in the Middle District of Tennessee under 28 U.S.C. §1391(b)(2) because a substantial portion of the events giving rise to this action occurred within this District.

4. Plaintiff brings this lawsuit to redress Defendants' violations of Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments of the United States Constitution and her civil rights pursuant to 42 U.S.C. §1983, as well as violations of state law.

1

5. This is an action to redress the deprivation under color of statute, ordinance, regulation, custom or usage of rights, privileges and immunities secured to Plaintiff by the Constitution and laws of the United States. Plaintiff brings this action pursuant to 42 U.S.C. §§1983 and 1988.

6. Plaintiff also seeks monetary damages (special, compensatory, and punitive) against Defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

**PARTIES**

7. Plaintiff, LaBreesha Branae Batey, is a citizen of the United States and at all times relevant herein was a resident of Madison County, Alabama.

8. Defendant Trooper Nathan Methvin ("Officer Methvin") is and/or was at the time of the incident complained of herein a duly sworn and licensed officer with the Tennessee Highway Patrol acting under the color of state law and within the scope of his employment. He is sued in his official and individual capacity for misconduct occurring under color of state law.

9. Officer Methvin may be served at the headquarters for the Tennessee Highway Patrol located at 1209 N. Locust Avenue Lawrenceburg, Tennessee.

10. Defendant State of Tennessee is the governmental entity which governs and is liable for any malfeasance of the Tennessee Highway Patrol.

**FACTS**

11. On May 16, 2024, Plaintiff was operating a motor vehicle on or near Ardmore, Tennessee, Exit 1 on I-565 South.

12. Officer Methvin was monitoring traffic on Interstate I-565 South in Giles County, Tennessee on May 16, 2024, in his capacity as a Tennessee State Trooper.

13. Officer Methvin activated his blue lights and required the Plaintiff to pull over on May 16, 2024.

14. Plaintiff immediately complied with the traffic stop and pulled over despite grieving over her grandmother's death.

15. Plaintiff asked Officer Methvin if she was speeding.

16. Officer Methvin stated to Plaintiff that the basis of the traffic stop was minor violations including that Plaintiff had allegedly been speeding.

17. Plaintiff informed Officer Methvin that she did not believe that she was travelling at the high of a rate of speed that Officer Methvin had stated.

18. Plaintiff further informed Officer Methvin that she was on the phone with the funeral director preparing Plaintiff's grandmother's funeral at the time of the traffic stop.

19. Officer Methvin instructed Plaintiff to move her vehicle to "Gross Road" to continue their conversation.

20. Plaintiff put on her hazard lights and drove slowly about one-half mile up on Interstate I-565 without locating "Gross Road."

21. Plaintiff pulled over near the Ardmore Exit 1 exit on I-565 South but did not exit her vehicle once Plaintiff could not find "Gross Road."

22. Only after Plaintiff pulled over did Officer Methvin activate his sirens.

23. Officer Methvin immediately rushed to Plaintiff's vehicle from behind and ordered Plaintiff to "GET OUT OF THE CAR NOW, GET OUT OF THE CAR NOW!"

24. Plaintiff, confused and terrified, exited the vehicle complying with Officer Methvin's directive.

25. Officer Methvin then proceeded to handcuff Plaintiff and placed her in the back of his patrol car despite Plaintiff's compliance with his directives.

26. Officer Methvin asked Plaintiff for her driver's license, registration, and proof of insurance.

27. Plaintiff complied with Officer Methvin' request without complaint and while handcuffed in the back of the patrol car, gave consent for Officer Methvin to search her glove box for the requested documents.

28. Officer Methvin asked Plaintiff if she had been drinking or using drugs.

29. Plaintiff responded in the negative and informed Officer Methvin that she worked for NASA and her employment mandated she does not use drugs or alcohol.

30. Officer Methvin subjected Plaintiff to field sobriety tests for a period of 30-40 minutes on the side of I-565 in Giles County, Tennessee.

31. Officer Methvin administered field sobriety tests to Plaintiff based only on his suspicion that Plaintiff was driving under the influence of an intoxicant.

32. Plaintiff asserts that she successfully performed each field sobriety test conducted by Officer Methvin.

33. Unsatisfied with Plaintiff's successful performance of the sobriety tests, Officer Methvin placed Plaintiff under arrest on charges of Driving Under the Influence in violation of *Tennessee Code Annotated* §55-10-401.

34. Plaintiff inquired how Officer Methvin concluded Plaintiff was driving under the influence as Plaintiff does not drink alcohol or use drugs.

35. Officer Methvin denied Plaintiff's request for a breath test to be administered.

36. Plaintiff requested that her cuffs be loosened as they were producing pain.

37. Officer Methvin denied Plaintiff's request.

38. Officer Methvin threatened Plaintiff while she was still handcuffed in the back of the patrol car that a warrant would be issued for her arrest if Plaintiff did not "voluntarily" consent to a blood test.

39. Officer Methvin permitted Plaintiff one (1) phone call at the scene.

40. Plaintiff called her mother who affirmed to Officer Methvin Plaintiff's previous statements that Plaintiff does not consume alcohol or illegal drugs.

41. Officer Methvin informed Plaintiff's mother that Plaintiff would be transported to Southern Tennessee Regional Health System in Pulaski, Tennessee for a toxicology blood test.

42. Plaintiff, despondent, dehumanized, handcuffed, and, in fact, sober - as established by the blood test subsequently administered, was transported in the back of the patrol car for the blood alcohol test.

43. Plaintiff was further agitated by the rude and disrespectful manner in which Officer Methvin addressed Plaintiff and her mother.

44. Plaintiff informed Officer Methvin that she did not feel comfortable being transported in the patrol car and requested that EMS transport Plaintiff to Southern Tennessee Regional Health System.

45. Officer Methvin transported Plaintiff over her concerns and objections without buckling Plaintiff's seatbelt and sped and swerved through traffic towards the Southern Tennessee Regional Health System.

46. Officer Methvin finally complied with Plaintiff's request to loosen her handcuffs only after they arrived at Southern Tennessee Regional Health System.

47. Plaintiff would show that the Tennessee Department of Safety concluded that Trooper Methvin had violated the Department's applicable policies.

48. Plaintiff's wrists were injured by the too-tight cuffs utilized by Officer Methvin.

5

49. Officer Methvin did, however, buckle Plaintiff's seat belt while during her transport to the Giles County Jail from the Southern Tennessee Regional Heath System.

50. Upon arriving at the Giles County Jail, Plaintiff, terrified for her safety, pled with Searching Officer Norah Sue David to not let anything happen to Plaintiff.

51. While at the Giles County Jail, the Plaintiff, who was despondent, dehumanized and now truly terrified, was photographed, fingerprinted and booked.

52. The Giles County Jail issued Plaintiff jail slide footwear and a mat before placing Plaintiff in a cell with two (2) other inmates.

53. Plaintiff was denied a phone call while at the Giles County Jail.

54. Plaintiff affirmatively states that she had no prior criminal record prior to May 16, 2024.

55. At the time of her arrest, Plaintiff had neither committed a crime nor exhibited any behavior which would have given an ordinary person reasonable cause to suspect that she was intoxicated.

56. Defendants acknowledged that the sole purpose of the stop was based upon minor traffic violations.

57. Plaintiff affirmatively asserts the field sobriety tests conducted of Plaintiff were an unreasonable and unlawful extension of the traffic stop without a proper basis.

58. No reasonable person, much less a law enforcement officer, would have believed or suspected that Plaintiff was driving under the influence.

59. Plaintiff was arrested, booked into the local jail, and charged with driving under the influence.

60. Plaintiff's vehicle was impounded and towed from the scene at the direction of Defendants, causing Plaintiff to incur unnecessary expense.

6

61. Plaintiff submitted to a blood test upon arriving at Southern Tennessee Regional Heath System.

62. Plaintiff affirmatively states that her blood test was negative for all tested illegal substances.

63. Plaintiff received torn citations with illegible warrant information prepared by Officer Methvin upon her release from the Giles County Jail.

64. Officer Methvin never informed Plaintiff that he had added a hands-free offense to her charges.

65. Plaintiff retrieved her vehicle at Southway Towing Company at 901 N. 1st Street Pulaski, Tennessee 38478 where the attendant knew of Plaintiff's DUI arrest subjecting her to further humiliation.

66. Plaintiff was required to seek medical treatment for her injured wrists upon her return to Huntsville, Alabama.

67. Plaintiff affirmatively states that the Official Toxicology Report as well as the Official Alcohol Report were both negative for all tested substances as depicted below.





68.     Additionally, Plaintiff affirmatively states that she sought additional blood and urine tests to be administered in Huntsville, Alabama on May 16, 2024, which were also negative

for Ethyl Alcohol, basic drugs, opiates, buprenorphine, cannabinoids, cocaine, barbiturates, benzodiazepines, methamphetamine, fentanyl, oxycodone and/or oxymorphone.

69. Plaintiff spent over an hour in jail, her mugshot was taken and made publicly available, and her vehicle was seized and towed.

70. Plaintiff, mandated by her employment with NASA to not consume alcohol or drugs, risked loss of her employment and security clearance as a result of Officer Methvin's cavalier approach to determining Plaintiff was intoxicated. The Defendants' actions threatened Plaintiff's ability to complete her Doctoral dissertation.

71. Lacking any evidence of any arrestable offense committed by the Plaintiff, the General Sessions Court of Giles County, Tennessee dismissed all charges on September 5, 2024.

72. Defendants had no valid legal basis to extend the traffic stop.

73. Defendants had no valid legal basis to cause Plaintiff to perform field sobriety tests.

74. Defendants had no valid legal basis to arrest Plaintiff.

## DEPRIVATION OF FEDERAL RIGHTS UNDER 42 U.S.C. §1983

All of the relevant acts of Defendants, their agents, servants, and employees, were carried out under the color of state law and in their official capacity as agents of the State of Tennessee.

These acts deprived Plaintiff of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth and Fifth Amendments to the Constitution and in violation of 42 U.S.C. §1983.

## FIRST COUNT
### Unlawful Seizure -Arrest Without Probable Cause

75. Plaintiff realleges and incorporates by reference the allegations set forth above.

76. The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend IV.

77. A Fourth Amendment violation occurs where: (1) a person is seized; and (2) the seizure is unreasonable.

78. A seizure occurs where there is a physical force or a show of authority that in some way restrains the liberty of the person, and (as to a show of authority) that the person submits to the officers' show of authority.

79. A person has been seized within the meaning of the Fourth Amendment if, in view of the all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.

80. Once a seizure occurs, the seizure must be reasonable.

81. An arrest is "unreasonable" where it is not based on probable cause to believe that the individual has committed or intends to commit a crime.

82. Pursuant to *Tennessee Code Annotated* §55-9-107, once Officer Methvin declined to issue a traffic citation for Plaintiff's alleged speeding violation(s), then Plaintiff should have been free to leave because minor traffic violations are not arrestable offenses under Tennessee law.

83. Officer Methvin violated Plaintiff's rights by unlawfully detaining Plaintiff and by requiring Plaintiff to exit her vehicle to perform field sobriety tests without reasonable suspicion or probable cause to believe that Plaintiff operating her vehicle under the influence.

84. The seizure of Plaintiff for allegedly driving under the influence was unreasonable because Officer Methvin lacked probable cause.

85. The illegal seizure of Plaintiff's person and vehicle by Defendants was done in such a manner that no reasonable person would have thought that they were free to leave.

86. The illegal seizure of Plaintiff's vehicle and person without probable cause was a deprivation of her civil rights to be free from unlawful seizures under the Fourth and Fourteenth Amendments, enforceable through 42 U.S.C. §1983.

87. Defendants acted intentionally, maliciously, or with callous disregard for Plaintiff's rights.

88. As a direct and proximate result of the acts and omissions of Defendants, both independently and in concert with each other, Plaintiff suffered a violation of her constitutional rights, harm to her reputation and standing in the community, potential loss of employment with NASA, mental distress, shame, humiliation, and embarrassment, and was therefore damaged in an amount to be determined by a jury.

## SECOND COUNT
## False Arrest and Illegal Search

89. Plaintiff realleges and incorporates by reference the allegations set forth above.

90. To establish a state-law claim for false arrest and imprisonment, a plaintiff must prove: (1) a detention or restraint against the plaintiff's will; and (2) the unlawfulness of such detention or restraint.

91. False imprisonment requires that a defendant must have acted without probable cause.

92. For substantially the same reasons stated above as to the preceding Fourth Amendment claim, the Defendants falsely arrested and falsely imprisoned Plaintiff.

93. The primary duty of a State Trooper is to enforce Tennessee's traffic laws.

94. As previously discussed, Plaintiff should have only received a citation if Defendant observed Plaintiff committing a moving infraction such as speeding.

95. Officer Methvin violated the Plaintiff's rights by placing her under arrest without probable cause on his belief that Plaintiff was driving under the influence.

96. The purpose of Officer Methvin' initial stop was for a lawful purpose for Plaintiff's alleged moving traffic violations, speeding.

97. Plaintiff attempted to comply with Officer Methvin' directive to travel to "Gross Road" traveling at a low rate of speed with her caution lights on.

98. Officer Methvin administered field sobriety tests on a hunch that Plaintiff was driving under the influence after storming her vehicle from behind, terrifying Plaintiff, cuffing and placing her in the back seat of his vehicle. At one point, Officer Methvin directed Plaintiff to her knees, placed his hand on his clip and demanded that she not look at him.

99. Officer Methvin subsequently placing Plaintiff under arrest was not for any lawful purpose as evidenced by Plaintiff successfully completing multiple field sobriety tests.

100. These actions were a physical restraint, a show of authority, and a show of force.

101. Plaintiff pulled from the roadway upon being seized by the patrol vehicles' blue lights and cooperated with Officer Methvin.

102. There were no exigent circumstances justifying the arrest of the Plaintiff.

103. The false arrest of Plaintiff was a deprivation of her civil rights to be free from arrest without necessary probable cause under the Fourth Amendment.

104. Based upon the arrest made without sufficient probable cause, Officer Methvin undertook a warrantless search for Plaintiff's person.

105. The illegal search of Plaintiff's person was a deprivation of her civil rights to be free from unlawful searches under the Fourth Amendment.

106. A reasonably well-trained officer would know that there were no specific or articulable facts to justify searching Plaintiff's person.

107. A reasonable person in Plaintiff's position would not have felt free to leave.

108. With respect to this show of authority, Plaintiff submitted without protest.

109. The seizure was made without probable cause and without legal process.

110. Plaintiff was transported to the local hospital following her unlawful arrest to provide a blood sample under Officer Methvin's control and authority.

111. The collection and analysis of a blood sample is a "search" within the meaning of the Fourth Amendment. See Skinner v. Ry. Labor Execs. Ass'n, 489 U.S. 602, 618 (1989).

112. A search is unlawful if it is made without probable cause.

113. Defendant, without reasonable suspicion or probable cause, intimidated the Plaintiff into providing a blood sample by threatening Plaintiff with the issuance of a warrant for her arrest if she did not voluntarily comply.

114. As a result of these actions, Plaintiff suffered damages as identified above.

115. Defendants were the cause in fact and proximate cause of Plaintiff's damages.

116. Defendants acted intentionally, maliciously, or with callous disregard for Plaintiff's rights.

## THIRD COUNT
### State Law Claims of Assault and Battery

117. Plaintiff realleges and incorporates by reference the allegations set forth above.

118. To establish a state law claim for assault and battery, Plaintiff must prove that Defendants (1) intentionally or knowingly causing Plaintiff to reasonably fear imminent bodily injury and (2) offensive touching.

119. By his words and acts, Officer Methvin threatened Plaintiff while she was cuffed in the back of a patrol car with a warrant for her arrest if she did not voluntarily consent to a

blood test following her successful completion of several sobriety tests administered by Officer Methvin.

120. Placing cuffs on Plaintiff, who had never been arrested and committed no crime, and then placing Plaintiff in the backseat of the patrol car without reasonable suspicion or probable cause for an arrest was harmful, offensive touching.

121. Officer Methvin administered field sobriety tests on a hunch that Plaintiff was driving under the influence.

122. Officer Methvin subsequently placing Plaintiff under arrest was not for any lawful purpose as evidenced by Plaintiff successfully completing multiple field sobriety tests.

123. These actions were a physical restraint, a show of authority, and a show of force.

124. There were no exigent circumstances justifying the arrest of the Plaintiff.

125. As a direct and proximate result of the acts and omissions of Officer Methvin, Plaintiff suffered a genuine apprehension of fear of being sent to jail without probable cause, a violation of her constitutional rights, harm to her reputation and standing in the community, potential loss of employment, loss of her Doctoral degree, mental distress, shame, humiliation, and embarrassment, and was therefore damaged in an amount to be determined by a jury.

## FOURTH COUNT
### State Law Claims of False Imprisonment

126. Plaintiff realleges and incorporates by reference the allegations set forth above.

127. Officer Methvin falsely imprisoned Plaintiff and violated her rights by seizing her person and depriving her of her liberty without probable cause to believe that she had committed a crime.

128. The false imprisonment was a deprivation of Plaintiff's liberty without the requisite due process of law as defined under the Fourteenth Amendment and in violation of Tennessee State law.

129. As a direct and proximate result of the acts and omissions of Officer Methvin, Plaintiff suffered a seizure of her person, a violation of her constitutional rights, harm to her reputation and standing in the community, mental distress, shame, humiliation, potential loss of employment, loss of her Doctoral degree, and embarrassment, and was therefore damaged in an amount to be determined by a jury.

## FIFTH COUNT
## Monell Claim

130. Plaintiff realleges and incorporates by reference the allegations set forth above.

131. On information and belief, the Tennessee Highway Patrol in the Pulaski area, which encompasses Giles County, has a custom and culture of violating the constitutional rights of others.

132. Though not a written policy, this custom was so widespread as to have the force of law.

133. The Tennessee Highway Patrol in the Giles County area has a history of wrongfully tolerating, condoning, and encouraging constitutional violations.

134. As a result, it has become the custom and culture of the Tennessee Highway Patrol in the Giles County area to protect its officers when officers are known to have violated the constitutional rights of others.

135. The Tennessee Highway Patrol in the Giles County area fails to properly train, supervise, investigate, and discipline its deputies and officers when violations of the constitutional rights of the citizens traveling in or around Giles County, Tennessee occur.

136. Upon information and belief, the Tennessee Highway Patrol in the Pulaski area, has acted with deliberate indifference to a pattern of past occurrences of constitutional violations of citizens such that its officers and deputies feel empowered to violate the constitutional rights of its targets with impunity.

137. The Tennessee Highway Patrol failed to properly train its officers about the grounds for investigating the offense of Driving Under the Influence and the proper means for evaluating whether a citizen is driving while under the influence of a drug or intoxicant.

## DAMAGES

138. Plaintiff realleges and incorporates by reference the allegations set forth above.

139. Defendants are liable to the Plaintiff, jointly and severally, for all wrongful acts which harmed and caused damage to her.

140. Defendants are liable to the Plaintiff for damages for all violations of her civil rights under the Constitution of the United States as defined by 42 U.S.C. §1983.

141. Based on the facts and circumstances described in this Complaint, and as a direct result of said acts and omissions of the Defendants, Plaintiff has suffered damage to reputation; past pain and suffering; past, present, and future emotional distress; medical expenses, legal expenses and other financial losses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff LaBreesha Brane Batey requests a trial by a JURY and that a judgment been entered against Defendants, jointly and severally, as follows:

1. Compensatory damages of at least One Million Dollars ($1,000,000.00) or such other amount supported by the evidence at trial;

2. Punitive damages in an amount to sufficiently deter Defendants from engaging in future behavior as described in this Complaint but in no less than Two Hundred Thousand

Dollars ($200,000.00).

3. Attorneys' fees and costs of suit as provided by 42 U.S.C. §1988;

4. Court costs;

5. Pre- and post-judgment interest at the legal rate; and

6. Any and all other and further relief as the Court deems appropriate.

Respectfully submitted,
LABREESHA BRANAE BATEY, Plaintiff
by her attorneys,

CHANCEY-KANAVOS

BY: /s/ H. Franklin Chancey
H. FRANKLIN CHANCEY, BPR #013187
P.O. Box 42
Cleveland, TN 37364
(423) 479-9186
franklin@cklplaw.com